PHILIP H. DECKER

v.

JOHN PATTON ET AL., Ex'rs, etc.

</div>

1.  PARTIES—FOREIGN EXECUTOR.—A foreign executor, appointed by the court of another State, may properly appear in a suit in the courts of this State and defend the interests of his estate, and is a proper party for that purpose.  He may, under the statute, appear in court in any form in which it may become necessary for him to properly prosecute or enforce any of the claims of the estate of his testator.

2.  CHANCERY—MORTGAGES—STRICT FORECLOSURE.—In this State, in view of our statute, it is only in exceptional cases where the interest of both parties manifestly require it, that strict foreclosures will be decreed.  Such foreclosures are not proper, as a general rule, where there are incumbrances upon the property or creditors, or purchasers of the equity of redemption.

3.  SAME—BILLS TO REDEEM.—No such restrictions, however, are imposed upon courts of equity in entertaining bills to redeem.  In such cases the material question is whether the complainant is entitled to redeem

Decker v. Patton.

from the incumbrance, and if such right is established, he is permitted to redeem irrespective of the relative value of the property, or the claim of third persons.

4. Same.—An offer to redeem in a bill of this character is neither necessary nor material.

5. Same—Decree.—Upon a bill to redeem, where there are no peculiar facts and circumstances taking the case out of the ordinary rule, the complainant can not claim as right to have a decree entered for the sale of the mortgaged premises as in cases of foreclosure subject to the statutory right of redemption; and it is not error for the court to refuse to decree a sale, but to enter the decree usual in cases of bills to redeem.

6. Redemption—In bill to redeem, discretionary with the court.—Upon a bill to redeem, the time within which the redemption is to take place rests within the sound discretion of the court in view of all the circumstances, but the time which seems to have been usually adopted is six months.

7. Evidence—Of judgments against complainant properly excluded.—Evidence of judgments against the complainant in this case was properly excluded.

Error to the Circuit Court of Cook county; the Hon. Murray F. Tuley, Judge, presiding. Opinion filed October 27, 1886.

Mr. W. T. Burgess, for plaintiff in error; cited Barnard v. Cushman, 35 Ill. 451; Brown v. Gaffney, 28 Ill. 149; Dwen v. Blake, 44 Ill. 136; Quinn v. Brittain, Hoff. (N. Y.) Ch. 353; Shannon v. Spears, 2 A. K. Marshall, (Ky.) 311; Bishop of Winchester v. Paine, 11 Ves. 199; Sheldon v. Patterson, 55 Ill. 507; Warner v. Helm, 1 Gilm. 220; Farrell v. Parlier, 50 Ill. 274; Rourke v. Coulton, 4 Bradwell, 251; Miller v. Davis, 5 Bradwell, 474; Hollingsworth v. Koon, 18 Chicago Legal News, 269.

Messrs. Hutchinson & Luff, for defendants in error; cited 2 Daniell's Ch. Pr., 998; 2 Jones on Mortgages, §§ 1106, 1107; Harper v. Ely, 70 Ill. 581; 1 Starkie on Evidence, 213; 1 Greenleaf on Evidence, § 522; Whitaker v. Wheeler, 44 Ill. 440.

Bailey, J. This was a bill in chancery brought by Philip H. Decker to redeem certain real property from a deed of trust

executed December 8, 1879, by Mary P. Saunders and Thomas W. Saunders, her husband, to O. K. A. Hutchinson, as trustee, to secure the payment of certain promissory notes for $2,500 and interest, executed by said Thomas W. Saunders to Mindwell L. P. Patton. The case made by the bill, so far as it bears upon the questions raised by counsel in their arguments, is briefly as follows: In the year 1873, the complainant purchased and took possession of the premises in question and made various improvements thereon. In 1874, he executed a deed of trust upon said premises to secure $3,509 of borrowed money. After the complainant had made payments reducing this indebtedness to $2,500, the deed of trust was foreclosed and said premises sold, said Mary P. Saunders, who is a sister of the complainant, becoming the purchaser. To secure the purchase money to the holder of the incumbrance, said Mary P. Saunders and husband executed the notes and deed of trust in question in this suit, the complainant guaranteeing said notes. Mary P. and Thomas W. Saunders thereupon, for a consideration moving solely from the complainant, and at his request, conveyed said premises to Simeon Babcock, and afterward and on the 4th day of May, 1880, said Babcock and wife executed a quitclaim deed conveying and quitclaiming said premises to the complainant, which deed was delivered to the complainant a few days after the date last mentioned, but was not placed on record until March 8, 1883. The buildings on said premises consisted of a house and barn, and the complainant continued in possession of said premises, residing in a portion of the house and renting the residue, and occupying the barn as an office and place of business until May, 1879, at which time he removed from the house but retained and has since continued to retain the exclusive possession of the barn, and was so in possession thereof at the time of the commencement of the foreclosure proceedings hereinafter mentioned.

On the 16th day of December, 1881, said Mindwell L. G. Patton filed her bill in chancery in the Circuit Court of Cook county against Thomas W. Saunders, Mary P. Saunders, O. K. A. Hutchinson, the trustee, William M. Luff, his successor in

Decker v. Patton.

trust, and Simeon Babcock, for a foreclosure of the last men-
tioned deed of trust, and for a sale of said premises for the
amount due and unpaid thereon. The complainant was not
made a party to the foreclosure suit and did not appear therein,
though he at the time was in open and visible possession of
said barn under the deed from Babcock, and claiming title
thereunder to the whole of said premises.

Such proceedings were thereupon had in the matter of said
foreclosure suit, that on the 1st day of March, 1882, a decree
was entered finding the amount due the complainant therein
to be $2,980, and ordering a sale of said premises by the
master for the satisfaction thereof, and in pursuance of said
decree said premises were sold by the master April 1, 1882,
for $3,087.35, the full amount of the decree, interests and
costs, said Mindwell L. G. Patton becoming the purchaser, and
a certificate of purchase being issued to her. The bill alleges
that said premises are worth at least $6,000.

The prayer of the bill is, in substance, that an account be
taken of what is due on the notes and deed of trust, and that
a day be given the complainant to pay the amount found to
be due, and that, in default of such payment, the premises be
sold as in cases of mortgage foreclosures; that the decree ob-
tained upon the bill filed by said Patton be declared, as to the
complainant, a nullity, and no bar to his right to redeem, and
that the master be directed to refrain from executing any deed
thereunder, and that said certificate of purchase be surrendered
for cancellation, and also a general prayer for relief.

Answers and replications were duly filed, and the cause
coming on to be heard on pleadings and proofs, the court
found that the complainant was entitled to redeem from said
deed of trust; and the court having subsequently found that
there was due said Mindwell L. G. Patton on said note and
deed of trust the sum of $2,947.71, a decree was entered
November 2, 1885, that the complainant be allowed to re-
deem from said trust deed by paying to the clerk of the court
within twelve months from the date of the decree, said sum
of $2,947.71, with interest at the rate of six per cent. per
annum and costs; that on payment of said sum, interest and

costs within said twelve months, the decree in the foreclosure suit of Patton v. Saunders, et al., and the sale thereunder, be set aside, and said trustee execute a proper release of the trust deed; that if the complainant should not so redeem said premises within the time so limited, his bill should be dismissed and he thenceforth stand absolutely barred and foreclosed from all equity of redemption in and to said premises, and that the master execute a deed under said foreclosure sale to said Patton or her assigns. The complainant brings the record to this court by writ of error.

Since the entry of the decree and prior to the suing out of the writ of error, said Mindwell L. G. Patton died, leaving a last will and testament, by which she appointed John Patton and John K. Patton her executors. The plaintiff in error, after suing out his writ of error, suggested the death of said Mindwell L. G. Patton, and took out a *scire facias* against said executors, making them parties to his writ. Said executors, though not served with process, have voluntarily come and entered their appearance, and have submitted themselves to the jurisdiction of this court as defendants to the writ of error. The plaintiff in error now comes and suggests that said executors are not proper parties, for the reason that they are non-residents of this State, and have not taken out letters testamentary in this State, but were appointed executors by a court of another State.

We have grave doubts whether the plaintiff in error is in a position to question the official character of said executors or their right to appear as defendants to his writ. By his suggestion filed at the time he sued out his *scire facias* against them, he has solemnly admitted of record that they are the executors of the last will and testament of said testator; and by making and retaining them as parties, he is estopped, as it would seem to us, to question their right to represent the estate of their testator in this proceeding. If he is of the opinion that they are improper parties, he has the power at any time before final judgment on his writ, to dismiss them out of court and take measures to have such persons as he may conceive to be proper parties substituted in their place. So long as he

Decker v. Patton.

continues to prosecute them as defendants, we can not see how he can be at liberty to insist they are not proper defendants.

But we are of the opinion that said executors are proper parties. Section 42 of the statute in relation to the administration of estates gives express authority to executors appointed in other States to prosecute suits in this State to enforce claims of the estate of the deceased, in the same manner as if letters testamentary had been granted them under the provisions of the laws of this State. It is objected that, while they may *prosecute* suits in this State, there is no statute authorizing suits to be brought against them. It may well be doubted whether such statute is necessary, but if it should be admitted that it is, it would be a very narrow construction of the statute we now have, to hold that, under its provisions, a foreign executor can appear in the courts of this State only in those proceedings where he is in form the plaintiff, or the one who originates and sets such proceedings on foot. Numberless cases arise, both at law and in equity, where a party who is in form a defendant, is called upon to defend, protect and even prosecute affirmative rights and claims which are the subjects of the litigation. We see no reason for holding that a foreign executor may not, under the statute, appear in court in any form in which it may become necessary for him to appear in order to properly prosecute or enforce any of the claims of the estate of his testator. If so, he may often appear as a defendant. Take the ordinary case of the foreclosure of a mortgage by a foreign executor. There he may file his bill and obtain his decree for a foreclosure and a sale of the mortgaged premises, and if upon the entry of the decree the mortgagor should sue out a writ of error to have the cause removed to an appellate court, would any lawyer say that the complainant below would not be a proper defendant to the writ? Nor would the case be different where the testator dies after the decree and before the issuance of the writ of error. It is true the present proceeding is a bill to redeem rather than a bill for a foreclosure, but the presence of the mortgagee or her legal representative is just as essential to the collection of the mortgage, as it would have been if the bill had been for a foreclos-

ure. The executors are here for the purpose of enforcing a claim of the estate of their testator, and we think they may fairly be held to be parties within the provisions of section 42 of the statute.

Only two errors are assigned upon which the reversal of the decree is sought, viz., 1, the refusal of the court to decree a sale of the mortgaged premises as in cases of ordinary mortgage foreclosures, with the rights of redemption provided by statute, and 2, the exclusion of the evidence of certain judgments against the complainant.

In respect to the first assignment of error, it might be sufficient to say that the decree is in the usual form of decrees upon bills to redeem. It is the general practice of courts of equity in relation to bills of this character, after ascertaining the amount due upon the mortgage, to fix the time within which the complainant shall pay the mortgage debt, and the usual form of the decree is, that he be allowed to redeem by paying that amount within the time specified, together with costs, and that upon his doing so the defendant shall discharge the mortgage, and that upon default of such payment, the bill be dismissed with costs. 2 Barb. Ch. Prac., 199; 2 Daniell's Ch. Plead. & Prac., 998; 2 Jones on Mortgages, § 1106, and authorities cited. The time within which the redemption is to take place rests within the sound discretion of the court, in view of all the circumstances, but the time which seems to have been usually adopted by the courts is six months. (See authorities above cited.) In the present case the court gave the plaintiff twelve months, the full period of redemption given by the statute to the owner of the equity of redemption after a foreclosure sale, to redeem from the deed of trust.

No circumstances are shown, so far as we can see, which should take the case out of the usual rule applicable to bills of this character. It is true, if the complainant fails to pay the amount found due within the time allotted by the court, the decree will operate as a foreclosure of the mortgage. The complainant's right to redeem will then be forever barred, and can not be set up again in any form in the future. But such is the ordinary result of decrees upon bills to redeem, where

the complainant fails to avail himself of the opportunity to redeem given him by the decree.

It is insisted that, because the case is not one where a court of equity would have decreed a strict foreclosure at the suit of the mortgagee, it should not have entered a decree upon a bill to redeem which may have the effect of such a foreclosure. It has never been held, so far as we are aware, that bills to redeem are governed by the same rules as bills for a strict foreclosure.   In this State, in view of our statute, it is only in exceptional cases, where the interest of both parties manifestly requires it, that strict foreclosures will be decreed; as, where it appears that the property is of less value than the debt for which it is mortgaged, and the mortgagor is insolvent, and the mortgagee is willing to take the property in discharge of his debt.   But such foreclosures are not proper, as a general rule, where there are incumbrances upon the property, or creditors, or purchasers of the equity of redemption.   Farrell v. Parlier, 50 Ill. 274; Johnson v. Donnell, 15 Id. 97.   No such restrictions, however, have ever been imposed upon the power of courts of equity to entertain bills to redeem.   In such cases there is no inquiry as to the value of the property as compared with the amount of the incumbrance, nor as to whether there are purchasers, creditors or other incumbrancers.   The material question is, whether the complainant is entitled to redeem from the incumbrance, and if such right is established, he is permitted to redeem, irrespective of the relative value of the property, or the claims of third persons.

But it is suggested that the power of the court, in cases of bills to redeem, to enter a decree which may have the effect of a strict foreclosure, arises from the fact that, ordinarily, the complainant makes an express offer in his bill to do equity by paying the amount which may be found due; in other words, that he comes into court professing that his money is ready, saying: "There is my money—give me my estate;" and that the court has the right to take him at his word and limit his relief to the redemption which he offers to make, and as the present bill contains no specific offer to pay the redemption money, a different decree is required.   It is sufficient to say

in reply to this suggestion, that an offer to redeem in a bill of this character, is neither necessary nor material. As held in Barnard v. Cushman, 35 Ill. 451, the right to redeem does not depend upon any offers or concessions which the complainant may make in his bill, but upon the fact that he is the owner of the equity of redemption, and has the right to discharge the incumbrance thereon; that such offer would not place him under any greater or new obligations to pay the debt; that it would in no way tend to establish the complainant's right, or confer upon the court any power which it would not otherwise have, and that it would be of no conceivable benefit or advantage to the defendant to have such offer made. See, also, Dwen v. Blake, 44 Ill. 135.

The question then is, whether, upon a bill to redeem, where there are no peculiar facts and circumstances taking the case out of the ordinary rule, the complainant can claim as of right to have a decree entered for the sale of the mortgaged premises as in cases of foreclosure, subject to the statutory right of redemption. We are referred to some cases in Virginia and North Carolina from which it would appear to have sometimes been the practice in those States to adopt that procedure, but so far as our examination of the decisions has gone, it has not prevailed elsewhere, the general current of authority in the other States being the other way. Our attention is called to the case of Brown v. Gaffney, 28 Ill. 149, as sustaining the complainant's position. It appears from the reporter's statement of that case, that the decree permitted a redemption within thirty days, and provided that in case of a default the premises should be sold, subject to the statutory redemption. The court, in the opinion, however, make no reference to that feature of the decree, nor does the report of the case show that it was even called to their attention. The facts were somewhat peculiar and exceptional, possibly justifying the decree as it was framed. But even if the case could be held to be an authority in favor of the proposition that it is not error, on a bill to redeem, to order a sale, which we think it can not, it would then come far short of being an authority bearing upon the converse proposition that it is not error to adopt the usual practice and refuse to order a sale.

We are unable to perceive any error in the exclusion of the evidence of judgments against the complainant. It should be observed that none of the judgment creditors are in court asking for any relief, nor are said judgments set up or in any way alluded to in the pleadings. The evidence of said judgments was offered apparently upon the theory that the bill was in substance a bill for a strict foreclosure, and subject to all the incidents and restrictions by which that species of remedy is surrounded. That such theory was erroneous sufficiently appears from what we have already said. We find no error in the record, and the decree will therefore be affirmed.

<div align="right">Decree affirmed.</div>